Collin Eppley, state on the left, our left, your right. Good morning, your honors. May it please the court. My name is Emily Wood. I am from the Office of the State Appellate Defender on behalf of Bobby Fountain. We raised three issues in our brief, and with respect to the second issue, I'd like to withdraw it today in light of People v. Thompson. I'd like to focus on the first argument today, although naturally I'd be happy to answer any questions on material not covered. The case before you today is simple and straightforward. We know that Mr. Fountain was found in possession of cocaine and heroin. What we don't know, and what we're challenging today, is the exact amount of heroin he possessed. It's well established in Illinois that the state has to prove the weight of a substance when that weight is an essential element of the offense. The Illinois only exception to this rule is when the substance is sufficiently homogenous to allow for random sampling. In this case, we have no idea whether each packet was tested, and therefore the state fails to prove it. So let's say we agree with that, we have no idea. Then the question is, who should have established it? The state. Absolutely. Your position is the state, but to some extent, I mean, it is adversarial. I mean, this is an adversarial system, and when the state doesn't meet what you believe to be its burden, then is that an incentive there to, so that defense counsel doesn't have to do anything at that point. If he's up to snuff on the law, he can just sit back and say, well, they didn't prove, they didn't ask the right questions. I'm not going to ask any questions. I'm just going to sit here and do nothing. Well, certainly a defendant has a right to rest on the state's inability to prove guilt beyond a reasonable doubt, and that's what could happen in Your Honor's scenario. I mean, cross-examination is meant to test the credibility of the witness. It's not meant to fill in the blanks in terms of an essential element of the crime. I mean, that would make defense counsel meet the state's burden for that. The defendant doesn't have to prove anything, do they? No, absolutely not. Never. Right. But at some point, at some point, the state proves something. They prove that he had nine packets of heroin. They prove that heroin was in those, at least heroin was in one packet at least. And how many packets did they have to test, by the way? Do you know? Each one. They didn't have to test each one. All they had to test was a sufficient number to reach the one-gram weight. That is correct. That is correct. Do you know how many they had to test in this case? We don't know. And that's one. No. How many did the nine packets, what kind of weight did the nine packets have? The nine packets in total weighed 1.3. And if they were all equally, more or less, had an equal amount of substance in each packet, how many did they have to test? I think that's all nine. No, I think it's seven. Okay. I apologize, I don't have to. That's the sort of thing that, you know, I think it goes back to arithmetic, geometry. I'm not sure which, but it's something that I think you really needed to know because you need to tell us what they should have done. They certainly did not need to test all nine. And the question is, is there any evidence that, well, what facts do we know? We do know that she weighed each packet individually. And then that raises the question, what kind of inference can be drawn from that established fact that she weighed each of these nine packets individually? Is the inference that she slacked off thereafter, after going through the process of weighing each packet individually when she presumably didn't need to? I mean, she could have put them all on the scale and then subtracted whatever the weight was for the one packet. Which is what the chemist did in Clinton. Right. Right. But here. This isn't the same as the testimony that was presented in Clinton, although there was some suggestion in that case that the chemist didn't put everything together. But there was sufficient testimony to show, at least on that record, that the chemist did throw everything together. Now, this chemist didn't testify like that at all. Correct. And the question is, can we infer, if she went through the hassle or the individual weighing process, that she weighed each of those packets individually, can't we infer and can't the trier of fact, the jury, infer that she not only took that step, but then she took the next step, which was to test each of those packets individually, because it makes no sense to weigh them individually without testing them individually. I mean, doesn't that suggest common sense? Well, the state has two requirements. They not only have to weigh the substance, but they have to test it. And so, I mean, So the question is, why would they go through the first step if they had no intention of going through the second step? Well, and we do know that she did test something. Something did turn out to be positive for a simple question for the state to ask. They did not. They didn't ask. Defense counsel didn't ask. The defense counsel, I believe, received some sort of report from the chemist, and maybe the report from the chemist said that she not only weighed them individually, but tested them individually. That report isn't part of our record, but maybe that explains why defense counsel didn't bother asking the crucial question here, and maybe that explains why the state didn't bother asking that crucial question either, because it really wasn't an issue in the case at all. Well, let me refer you to your own brief on page 8. It says, Rayford determined that the nine packets consisted of 1.3 grams of powder. You refer to a record citation, 163. Rayford then conducted preliminary color tests. Is that T-E-S-T-S, or tests? Anyway, on some amount of the powder, the results of which indicated heroin. Then there's another record citation. Then it says, these tests, again, plural, these tests, plural, were followed by a confirmatory gas chromatography, mass spectrometry test, I don't know if I'm pronouncing it correctly, conducted by Rayford, during which a small amount of sample was put into a glass vial with a reagent, the contents of which is read by an instrument. These are not my words, they're your words. I don't have the record pages in front of us, but does this indicate that there were multiple tests performed, or does it indicate she just did one? No. And perhaps, according to the, my use of the plural was incorrect. If you look at the record, and in fact on the state's brief page 10, it makes it a little bit more clear that it's a singular test, and her response is also singular. It's a small amount of powder, and some amount of, a small amount of sample, and some amount of powder. But in that testimony, she was describing the tests that she performed, and she would have performed the same test on each of the samples. She wouldn't have performed multiple tests on one sample, so there would be no reason to describe them in the plural if she was performing the same test over and over again. Well, isn't your argument one that you're not arguing that the forensic scientist didn't do her job? You're arguing that the state's attorney didn't ask the proper question to convict? Exactly, Your Honor. And the problem here is that we just don't know. And Jones and this Court in Clinton, and this Court in its recent opinion in Adair, have all said that without a finding based on the evidence, anything more would be conjecture and speculation, and this cannot happen. That's the general rule. That's the general rule. The more specific rule turns on the facts of each case. Jones isn't like this case. Clinton isn't like this case. Adair isn't like this case. Do you have a case that's like this case that reverses? I mean, Jones is certainly our best authority for our professional reversal. And we all know what Jones held. They only tested two out of five. Right. But here, we're in a worse situation because we simply don't know. It's the state's... But why should we presume that she only tested less than the minimum number, which would have been seven? Why should... Maybe that's what they've been doing for years. I don't know. Because the presumption in this case would be reading into the record an element that has not been proven by the state. Except, tell us why she would have weighed each of these items individually and stopped there, and not tested each of these items individually. And maybe she did. The simple fact is we do not know. Well, maybe she did. And the question then becomes, is that a permissible inference that we allow the trier of fact to draw? And if it is, then the question simply is whether, based on facts and reasonable inferences drawn from those facts, proof has been established beyond a reasonable doubt. Well, number one, I would say that that lessens the burden for the state. And if that exception were allowed, the state has no incentive to ask the required questions of their expert witness who's sitting there on the stand. I can understand the reasoning when we're involving a stipulation where both And the courts have said, you know, what are we supposed to do? Basically, our hands are tied. You agreed to this. This is not the case here. The state brought in its expert. The state is required to prove the element of the offense, which is the weight. And as you pointed out, it may not be all nine packets. But it has to be up until the weight class that they're trying to prove. And that means my argument is unchanged, no matter what the number of packets, because Jones requires it. Jones requires each packet to be tested. This is nothing new. This is not a hardship for the burden whatsoever. You know, even had it become a What if that document that was presented to each side in discovery shows that each packet was tested individually, and that information simply didn't make it into the record because the state didn't ask the right questions, defense counsel didn't ask the right questions? Shoot, are we giving this defendant a pass when the evidence, maybe the information, not evidence because it was never presented in court, but information is out there that it proves that he had, he possessed more than one gram of heroin, or at least one gram of heroin? Well, first of all, again, that would be speculation and conjecture that the report even exists. It's only speculation and conjecture right now. What if that document exists that establishes as a fact? And we just don't have it. Right, and without it coming in at trial with the state using it to prove that the weight of the substance was in fact tested and tested positive for heroin, we have nothing. And he does not. What about the Miller case? Now, that didn't involve testimony. It involved a stipulation. But the court in Miller said that based upon the testimony, it's difficult to ascertain whether the chemist's statement, having removed the white packet from the containers, means that the chemist weighed each packet separately or combined them, nor can we analyze, or can we ascertain whether the chemist analyzed the contents of the packets prior to combining them. The Miller court ultimately rejected the defendant's challenge because where the record is unclear, we will not presume that an improper procedure was performed. Right, and again, I would argue that the stipulation part is crucial to that case. Again, the goal, no, they were actually talking about taking the evidence. They prefaced this whole discussion with the principle that we're bound by, and that is that we have to interpret the evidence in a light most favorable to the prosecution. Right, but that still does not relieve the state from its burden at trial. Let's get down to the nuts and bolts or the bottom line here. Aren't you really saying that this chemist engaged in an improper chemical analysis of those items? I'm saying we simply don't know. I'm saying that the weight we did know that she did, that you'd lose, so the only way you would win is if she engaged in improper analysis of the substances that were recovered. Isn't that the only way you would win? Right, if it were clear from the record that those were the facts, yes. But my argument is twofold. There's a subpart to that naturally, which is, again, the state has to prove it. It's not enough that the chemist performs the work behind the scenes. The state has to bring this evidence forth for the trier of facts. They have to establish it on the record. Absolutely. The packet was tested so that when he's sentenced for the amount that he supposedly possessed, it's actually that amount and not something less. Exactly, and again, that illustrates the conclusion that he's not walking away with a pass. He still remains convicted of something. We're just asking this court to reduce it to the lesser included because of the weight element and have it not being met by the state. Thank you very much. You'll get a couple of minutes. Thank you very much. I apologize. My name is Martin Sewardson on behalf of the people. Your Honors, I'll begin where I'm probably going to end, the conclusive testimony at the end of the chemist's testimony, which was 1.3 grams of heroin tested positive. Before you end and before you begin, your argument, is your office prepared to acknowledge that the direct examination of the chemist fell a little short of what would have been required to avoid having this issue brought before us? Are you willing to say that? No, your Honor. In this instance, the testimony was sufficient. What we did was Well, let me put it this way. Was it sufficient to eliminate this issue from being raised before us? It was not sufficient to eliminate this issue. Could it have been sufficient to have eliminated this issue before us? Well, the problem is on a few issues. Could it have been sufficient to eliminate this issue before us? If the state's attorney at trial said, Mr. Chemist, Ms. Chemist, did you co-mingle the substances and allow her to answer no, that would have certainly eliminated it. Or she could have asked, did you test it? Absolutely. That would have eliminated the issue before us. It may have eliminated it. However, the element before that the state has the burden of proving and the element at issue right now is whether, in fact, there was more than one gram that tested positive for heroin. That was the conclusive testimony. Additionally, to require questioning regarding co-mingling, noting that the testing methods are not the element that the state has to prove, simply the amount. Well, co-mingling, when you raise that issue, it sounds a little like a red herring because I didn't hear that word come from defense counsel. They're not saying that co-mingling occurred here. They're not saying that she co-mingled. They're saying she just didn't testify sufficiently. They're saying the evidence doesn't support that she tested each packet. It says that she weighed each packet, but it doesn't show that she tested each packet to bring it over one gram. Well, to find, to look into the record and construe this ambiguity is to not view the evidence in the light most favorable to the prosecution, as this court must do. And further, the testimony that was at trial in front of the jury, in front of a rational jury, was that 1.3 grams of powder was found in the individually weighed packets. And then the final testimony was that 1.3 grams of heroin was, in fact, deemed present by that forensic chemist who was qualified as an expert at trial. That certainly is sufficient to support the jury's rational finding that satisfied that essential element of the crime. But you concede that it isn't direct evidence, but it is. What sort of evidence is it? It certainly supports a rational inference. And the only direct evidence that we have and the only evidence that we need is the chemist's conclusion that 1.3 grams of heroin was present. That was subject to cross-examination, and, as Your Honor brought up, the defense counsel certainly had something that's not available on appeal, and that's the matter of discovery. He had it before him. He did not testify, or did not test that chemist's testing procedures, did not test the amount and the composition of the substance that was found, and did not focus on this issue at all at trial, which further evidences. We're not talking about waiver. We're talking about sufficiency of the evidence. They can raise this here because they have a right to raise any sufficiency of the evidence beyond a reasonable doubt, and that's what they're contesting. Absolutely, Your Honor. However, what that does show us, and where it is informative to this court, is that it wasn't an issue. It's simply an issue that's being brought up on appeal, looking into a cold record, and what this court has to do is it does not substitute its judgment for the trial effect. It does not substitute its judgment for the jury that was there to witness the testimony of the evidence. No, but what these cases are beginning to show is that perhaps in the possession cases the chemists are not testing each packet. They're simply weighing individual packets. They're testing one, performing multiple tests, which she did indicate that she performed multiple tests. One has three different color results. The other is a different test, but it doesn't show through that she tested each packet doing these tests on each packet. Now, I really don't know if that's how they're operating, but they have done it in certain cases. This is just another case where the record doesn't clearly say one way or the other whether she tested each of the nine packets. We know she weighed them. Now, I understand your position, but if you take it together, you can reasonably infer. That's your position. And doesn't it make somewhat common sense that you get nine packets all looking alike? You weigh all nine packets individually. You're going to say, they all look alike. The powder is all alike. There's nothing to distinguish one packet from the other. I'm just going to test one. And conclude that all the others would have tested the same way. Well, Your Honor, the common sense conclusion, viewed in light of what the jury would have seen in this instance, is informative. Because the testimony was that nine tinfoil packets were taken out of the defendant's pocket. Then, as you're well aware, the testimony from the forensic chemist. There's nine. I weighed nine packets separately. Then we have the issue where she conducted the test, where there is no simple question saying, did you test each of them separately? But what you also have is that at trial, the forensic chemist was handed Exhibit 1, which consisted of nine tinfoil packets containing the powder. Now, what the defense then would have us believe is that she commingled the substance or didn't test them and then, you know, did not follow proper procedure. And the jury was sitting there with the ability to witness. What you just said, did not follow proper procedure. So are you saying that it was her training to, in fact, not only weigh each of these packets individually, but to test these packets individually? Absolutely. I mean, that is the testimony that she gave when she was laying the foundation for her final opinion. She laid the foundation explaining the tests that are done on these packets, and then she gave her final opinion, a final opinion that went unchallenged, unrebutted, unimpeached. And that is certainly sufficient to satisfy the finding of this rational jury in this case. Now, the Jones and Clinton cases and Adair most recently certainly raised some issues, but the facts of those cases cannot be implied into the testimony of our case here. There is no ambiguity in the record. With Jones, you had the admission by the chemist saying that the amount tested was only .59 grams. That was unrebutted before this court. Before this court in Clinton, there was the concession by the state in this case that some commingling had occurred. I don't remember them conceding anything. Well, that was the finding of this court and the basis of its ruling, and there is no such testimony. What was in Adair? Two of us were on that case, I think, or perhaps all three of us. I don't recall the panel member, but I know it was Justice Garcetti. It was pills, though. The pills had crumbled. And at that point, that is another concern and a valid concern. But to take those concerns and then imply them in this unambiguous record is simply unwarranted at this point. So that's what I was going to ask you. So there's a difference between ambiguous evidence, such as in Clinton, where he obviously put all the substances together in a single pile and weighed and tested that same pile, as opposed to doing each of the packets individually,  Here, there is no testimony that she did any of that. So is there a difference between ambiguous evidence and the absence of evidence? Now, the testimony here, well, first of all, the ambiguous evidence, or the absence of evidence, does not concern the establishment of the essential element. That part is unambiguous and established. Let me suggest that maybe there is a difference between ambiguous evidence and absence of evidence. Absence of evidence, you can fill in with inference from established evidence. You can't eliminate an ambiguity in the evidence by an inference from other established evidence because the ambiguity is there. Here, there is no ambiguity. We're reading into a cold record. There is no ambiguity. And, again, the standard is that all evidence must be viewed in a light most favorable to the prosecution at this stage. To hold the lack of that one question that would have basically eradicated this whole appeal would be the wrong way. Is that where we started? Yes. And there we end with the conclusive testimony, the 1.3 grams of heroin. All right, well, thank you very much. Thank you. My primary response is that we are not asking you to believe anything. In fact, that is our argument is that you cannot read something into the record that is not there that was the state's affirmative burden. Can we find a reasonable, can we draw, can we find that the jury drew a reasonable inference from established facts in the record? On this record, no. To fill in that gap? On this record, no. The facts simply are not there to support the chemist's conclusion. Can we infer that this chemist would basically testify that her opinion was that this was 1.3 grams of heroin when she hadn't tested the substance? Can we infer that she did something wrong that, based on her credentials and what is in this record, that she, as a chemist, would say that this is, it weighs this and there's that much heroin in there if she didn't test it? Can we infer that from this record? I mean, I don't think it's necessary. I think that. But, I mean, don't we have to get to that to accept your argument that she didn't test? Can we infer when she stated under oath in her opinion, she went through the tests she did, she said she weighed them separately, and she was asked what her conclusion was, and she said, based upon a reasonable degree of scientific certainty, I am of the opinion that this package, this exhibit, contains 1.3 grams of heroin. Should we presume she was saying something other than what she said? In other words, she's giving her opinion that that's how much it was. I mean, where are we getting to that she commingled or that she didn't test all of them? I mean, it's certainly not our argument that the items were commingled. Where do we get that she didn't test them when she gave this opinion in front of a jury? She swore to tell the truth. Where do we get that she somehow didn't weigh every one of them? By the absence of the evidence. There's nothing there that indicates that she did. Well, she said she weighed everything. Sure. She said she conducted a test on the exhibit. I don't know if she said tests or tests. She explained what the tests were. I think she said she takes some of the sample. But are we to infer from this record, can we infer both that she did what she was supposed to do, she tested every packet, and can we also infer maybe she didn't test every packet? Where do we go from there? If the answer stands as it is, then basically what this court would be ratifying is that the state only has to prove weight and some amount of testing, which is completely contrary to Jones. Wait a minute. What about the inferences I just gave you? Can we conclude that the jury could confer either one of those? No. It's not a reasonable inference that the chemist tested everything here? No. Okay. No. And, again, Jones would require more. In fact, you're required to take that position in order to win because it's hard. Right. But, you know, from an academic standpoint, this is an expert witness. What you're telling us is that this expert witness's basis for her opinion was incorrect because the inappropriate question wasn't asked to show her actual basis. Is that what you're telling us from an academic standpoint? Right. I mean, it's the state's job to draw out these essential elements, and by doing that it would ask very simple questions. Again, nothing new in terms of requirements from the state about exactly how she did test and what led her to the conclusion. Without more, there's just too much of a jump. It's not allowed by Jones. And Jones points out, I mean, Your Honor brought up the point about the packets being similar, and Jones brought up the point that there's a big warning out there about lookalike substances. We simply don't know enough about all the substance in each individual packet to make that jump, to make that inference that they were all, in fact, the same substance, especially in light of the fact that there's so much lookalike substance out there. I don't think we'd be doing that. That wouldn't make sense for, certainly, Clinton, because in Clinton it's white powder. And the Fourth District case points out that this is not what would be called a homogenous substance, simply because it's white powder. Right. Like pills that have the same marking, that are the same color, well then, you know. Sure. And in this case it's very similar. All we know is that it's powder. We know nothing more. So, in conclusion, I would just like to reiterate my request that this court reduce Mr. Fountain's conviction to the lesser included, Class 1. Thank you. All right. We thank both counsel for their argument. It was well presented, and the case will be taken under advisement. Court is in recess.